UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TIMOTHY ALAN CONNELL,

    Plaintiff,

v.      Case No. 3:23-cv-1122-BJD-LLL

LIEUTENANT WENDOROFF
and SERGEANT HARDIN,

    Defendants.
_____

# ORDER

## I. Status & Background

Plaintiff, Timothy Alan Connell, an inmate of the Florida Department of Corrections (FDC), initiated this action *pro se* by filing the following: a complaint for the violation of civil rights under 42 U.S.C. § 1983, seeking solely injunctive relief (Docs. 1, 1-1 through 1-3); a declaration in support of his request for injunctive relief (Doc. 2); and a motion to proceed *in forma pauperis* (Doc. 3). Plaintiff alleges his (and other inmates') First Amendment rights are being violated at Florida State Prison (FSP) because FDC policy prohibits inmates in close management confinement ("one man cell[s]") from talking to one another while in their cells (through windows, doors, or air vents), and

when they violate the policy, they are threatened, harassed, or subjected to the use of chemical agents. *See* Doc. 1-1 at 5, 9-10.

He names two Defendants in their individual and official capacities: Lieutenant Wendoroff; and Sergeant Hardin. *Id.* at 2.[1] Plaintiff alleges both Defendants Wendoroff and Hardin have enforced the policy by improperly reprimanding or threatening him and other inmates with chemical agents for engaging in "disruptive behavior." *Id.* at 2-6. Additionally, he asserts that both Defendants "repeatedly . . . stag[e] false instances of disruptive behavior . . . [to] threaten … him [and other inmates] with chemical agents." *Id.* at 5; Doc. 1-3 at 5. He complains that the officers' false reports of, or "staged," disturbances have "d[i]minish[ed] [his] charact[e]r . . . and credibility." *See* Doc. 1-3 at 7; Doc. 2.

Plaintiff further asserts the use of chemical agents and other punitive measures (i.e., disciplinary proceedings, property restriction, food and clothing deprivation) to enforce the policy constitutes cruel and unusual punishment in

---

[1] In other places in his complaint, Plaintiff refers to Defendants as all "[FSP] administrators, [including] wardens; assistant wardens; colonel; major; [etc.]." *See* Doc. 1-1 at 9 (internal punctuation omitted). To the extent Plaintiff sues the two named Defendants in their official capacities for an alleged unconstitutional FDC policy, such a claim is the equivalent of a claim against the FDC. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . generally represent … another way of pleading an action against an entity of which an officer is an agent." (internal quotation marks omitted)).

violation of the Eighth Amendment. *See* Doc. 1-1 at 10, 13. Notably, however, Plaintiff does not allege either Defendant has sprayed him with chemical agents for talking to another inmate in violation of the FDC policy. *Id.* at 2-5. *See also* Doc. 1-3 at 2-3, 5-6 (affidavit in which Plaintiff names numerous FSP officials—not Defendants—who have sprayed him or placed him on property restriction for various reasons, including for assaulting a corrections officer). Finally, Plaintiff suggests that Defendant Wendoroff has retaliated against him for filing a grievance to complain about the policy. *See* Doc. 1-1 at 4. The form of the alleged retaliation was "harass[ment]." *Id.*

As relief, Plaintiff seeks entry of a temporary restraining order or preliminary injunction prohibiting Defendants and officials at FSP from using punitive measures (chemical agents, property restriction, "and other forms of retaliation") to enforce the policy, and to "cease the policy," which infringes on inmates' free speech rights. *Id.* at 7. *See also* Doc. 2.

## II. Standard of Review

The Prison Litigation Reform Act (PLRA) requires a district court to dismiss a complaint if the court determines it is frivolous, malicious, or fails to state a claim on which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b)(1). Since the PLRA's "failure-to-state-a-claim" language mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, courts apply

3

the same standard in both contexts. *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). *See also Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" that amount to "naked assertions" will not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 555). Moreover, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001) (quoting *In re Plywood Antitrust Litig.*, 655 F.2d 627, 641 (5th Cir. Unit A Sept. 8, 1981)). In reviewing a complaint, a court must accept the plaintiff's allegations as true, liberally construing those by a plaintiff proceeding *pro se*, but need not accept as true legal conclusions. *Iqbal*, 556 U.S. at 678.

### III. Analysis

Plaintiff's complaint is subject to dismissal under the PLRA because he fails to "state a claim to relief that is plausible on its face." *See id.* To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under

the color of state law deprived him of a right secured under the United States Constitution or federal law. 42 U.S.C. § 1983. Plaintiff alleges Defendants Wendoroff and Hardin have violated his rights under the First Amendment (by denying him his right to free speech) and Eighth Amendment (by threatening to use force against him and other inmates for violating the policy). *See* Doc. 1-1 at 9-12. He further implies that Defendant Wendoroff has violated his rights under the First Amendment by retaliating against him for filing a grievance. *See id.* at 3-4.

**A. Eighth Amendment**

To the extent Plaintiff seeks to hold Defendants liable in their official capacities for what he perceives to be an unconstitutional policy because officers spray inmates with chemical agents when they are disorderly, the Eleventh Circuit has held that "[p]epper spray is an accepted non-lethal means of controlling unruly inmates." *See Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008), *overruled in part on other grounds as recognized by Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010).

To the extent Plaintiff seeks to hold Defendants liable in their individual capacities for enforcing the policy through force, he fails to state a plausible claim under the Eighth Amendment. *See* Doc. 1-1 at 10-11. First, Plaintiff fails to state a plausible excessive-force claim because he does not allege Defendants

5

Wendoroff or Hardin have sprayed him with chemical agents. Rather, he alleges they have threatened to spray him for engaging in disruptive behavior. *See generally id. See also* Doc. 1-3 at 2, 5. "[V]erbal abuse alone is insufficient to state a constitutional claim." *Hernandez v. Fla. Dep't of Corr.*, 281 F. App'x 862, 866 (11th Cir. 2008).[2]

Second, Plaintiff fails to state a plausible claim that his conditions of confinement violated the Eighth Amendment because he does not allege Defendants were deliberately indifferent to conditions that were "sufficiently serious." *See Chandler v. Crosby*, 379 F.3d 1278, 1288 (11th Cir. 2004) ("The 'cruel and unusual punishments' standard applies to the conditions of a prisoner's confinement."). Allegations of merely harsh conditions do not state a claim under the Eighth Amendment. *Id.* at 1289. Assuming that an outright ban on talking in specified locations of the prison may be considered "harsh," Plaintiff does not allege facts permitting the reasonable inference that being sprayed with chemical agents poses an unreasonable risk to his health or safety of which Defendants were aware. *See id.*

Moreover, accepting that Plaintiff was at times denied food, clothing, or other "basic human needs," *see* Doc. 1-1 at 13-14, his allegations in this respect

---

[2] Any unpublished decisions cited in this Order are deemed persuasive authority on the relevant point of law. *See McNamara v. GEICO*, 30 F.4th 1055, 1061 (11th Cir. 2022).

are vague, amounting to no "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," which does not satisfy the federal pleading standard. *Iqbal*, 556 U.S. at 678. *See also Tani v. Shelby Cnty., Ala.*, 511 F. App'x 854, 857 (11th Cir. 2013) (affirming dismissal of a complaint that alleged, as labels and conclusions, violations of various constitutional rights with no supporting facts to "explain what actions caused which violations"). He does not allege who denied him "basic human needs," when, for how long, or what the result of the deprivation was. *See* Doc. 1-1 at 13-14. *See also* Doc. 1-2 at 3-4. For the reasons stated, Plaintiff fails to state a plausible claim that his Eighth Amendment rights were violated.

### B. First Amendment

#### i. Free Speech

Plaintiff primarily takes issue with the "no-yelling" policy and Defendants' practice of enforcing the policy against him and all close management inmates. *See* Doc. 1-1 at 2-5; Doc. 2. Prison officials are afforded wide latitude in running a prison, including the "withdrawal or limitation of many [inmate] privileges and rights," such as the right to speak freely. *See Smith v. Mosley*, 532 F.3d 1270, 1277 (11th Cir. 2008) (alteration in original) (quoting *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). "[A]n inmate's First Amendment right to free speech is not protected if affording protection would

be inconsistent with the inmate's 'status as a prisoner or with the legitimate penological objectives of the corrections system.'" *Id.* In other words, prison officials may implement regulations that burden inmates' fundamental rights when those regulations are "'reasonably related' to legitimate penological objectives." *Turner v. Safley*, 482 U.S. 78, 87 (1987).

"Courts have consistently concluded that a blanket restriction on inmate speech in . . . specific locations within a prison is a reasonable restriction and does not constitute a deprivation of an inmate's First Amendment right to free speech." *Wheeler v. Maddox*, No. 5:15-cv-232-WTH-GRJ, 2017 WL 9440399, at *8 (N.D. Fla. June 27, 2017), *report and recommendation adopted sub nom.*, 2017 WL 4810002 (N.D. Fla. Oct. 25, 2017) (citing cases). *See also Holmes v. Dalrymple*, No. CV 312-099, 2013 WL 504690, at *3 (S.D. Ga. Jan. 15, 2013), *report and recommendation adopted*, 2013 WL 504688 (S.D. Ga. Feb. 7, 2013) (analogizing disciplinary action against an inmate for violating a no-talking policy to "a student receiving a detention for being disruptive in class").

According to Plaintiff's own allegations, the FDC policy prohibits "yelling," not merely talking. *See* Doc. 1-1 at 3-4. According to Plaintiff, Defendant Wendoroff explained to him the close management housing rules provide in part that "inmates will conduct themselves in a [quiet] manner at all times and there shall be no *yelling* out of cell doors, back windows[,] or air

8

duct vents." *Id.* at 3, 12 (emphasis added). Plaintiff does not allege facts permitting the reasonable inference that the no-yelling policy is not reasonably related to legitimate penological objectives—i.e., to ensure security and order in an environment that easily can escalate into chaos and disorder. Indeed, a jurist of this Court previously held a similar no-yelling policy was reasonably related to legitimate penological concerns to avoid "bedlam." *See Osterback v. McDonough*, 549 F. Supp. 2d 1337, 1358 (M.D. Fla. 2008) ("[A]ny restrictions against yelling or speaking too loudly are constitutional."). Accordingly, the Court concludes Plaintiff fails to state a plausible First Amendment claim for implementation and enforcement of the policy that prohibits close management inmates from yelling to one another between their cells.

### ii. Retaliation

To state an actionable claim for retaliation, a plaintiff must allege:

> (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action . . . and the protected speech [the grievance].

*O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011) (first and third alterations in original). An inmate's filing of a grievance to complain about his

conditions of confinement constitutes protected speech. *See Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003).

Plaintiff suggests Defendant Wendoroff retaliated against him on one occasion—September 11, 2023—after he wrote a grievance. *See* Doc. 1-1 at 3-4. Plaintiff filed the relevant grievance on August 29, 2023, complaining about an alleged "unwritten rule" forbidding close management inmates from speaking to one another and that "officials at [FSP] . . . threaten[ed] [him] with the use of chemical agents . . . if [he] did not stop communicating with other inmates out of [his] cell window." *See* Doc. 1-2 at 2. Even though Plaintiff alleges he engaged in protected speech, he fails to allege facts showing or permitting the reasonable inference that Defendant Wendoroff took "adverse action" against him because he filed the grievance. Notably, in his grievance, Plaintiff did not complain about Defendant Wendoroff but rather complained about the policy. *See id.* Indeed, Plaintiff did not mention Defendant Wendoroff by name at all in the grievance. *See id.*

The basis of Plaintiff's retaliation claim against Defendant Wendoroff appears to be that Defendant Wendoroff came to his cell on September 11, 2023, and mentioned the grievance. *See* Doc. 1-1 at 3. But according to Plaintiff, Defendant Wendoroff simply told Plaintiff that the "unwritten rule" of which he complained was in fact a written policy, and Defendant Wendoroff read the

10

policy to him, referring him to the Florida Administrative Code. *Id.* at 3-4. When Plaintiff argued about the policy, Defendant Wendoroff allegedly said, "try me," and "threw his hand[s up] and walked off." *Id.* at 4. Plaintiff alleges Defendant Wendoroff came to his cell later that day, along with a mental health doctor, to conduct a crisis intervention before using chemical agents on him, allegedly for his "disruptive behavior." *Id.* Plaintiff claims he was not being disruptive. *Id.* Regardless, it appears the crisis intervention was successful because chemical agents were not used—or at least Plaintiff does not allege he was sprayed on that occasion by Defendant Wendoroff or at his direction. *See id.* Plaintiff alleges he told the doctor that he (Plaintiff) believed Defendant Wendoroff was "harassing [him] for writing a grievance." *Id.*

Even if Plaintiff subjectively believed at the time that Defendant Wendoroff was "harassing" him for writing a grievance, he alleges no facts indicating Defendant Wendoroff took any adverse action against him *because* he wrote a grievance. For instance, Plaintiff does not allege Defendant Wendoroff targeted him specifically, or enforced the no-yelling policy against only him. Rather, Plaintiff alleges Defendants Wendoroff and Hardin (and other officers) have warned him *and other inmates* to "cease [their] disruptive behavior and stop yelling" on threat of being sprayed with chemical agents if they do not comply. *Id.* at 4-5. Accepting as true that Defendants regularly

11

enforce the FDC's "no-yelling" policy against Plaintiff and other inmates by threatening the use of (or using) chemical agents, their conduct cannot be construed as retaliation because an inmate's violation of a legitimate prison policy is not a constitutionally protected activity. *See Smith v. Mosley*, 532 F.3d 1270, 1277 (11th Cir. 2008) ("[I]f a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct ....'").

Additionally, accepting as true that Defendants Wendoroff and Hardin have "falsified documents, reports, and records 'staging' a false instances [sic] of disruptive behavior . . . and threaten[ed] to spray [Plaintiff]" and other inmates, Plaintiff does not allege Defendants did so because he filed a grievance complaining about the policy. *See* Doc. 1-1 at 5; Doc. 1-3 at 6. Considering Plaintiff's allegations as a whole, it appears he merely opposes the "no-yelling" policy and disagrees with what officers consider to be "yelling." *See* Doc. 1-1 at 3-6, 9-10. *See also* Doc. 1-2 at 204; Doc. 1-3 at 1-2, 5-6. Liberally construing Plaintiff's allegations, he fails to state a plausible retaliation claim against Defendant Wendoroff.

Accordingly, it is

**ORDERED:**

1. This case is **DISMISSED without prejudice**.

2. The **Clerk** shall enter judgment dismissing this case without

prejudice, terminate any pending motions as moot, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 21st day of November 2023.

　　　　　　　　　　　　　　　　　　　　　　　BRIAN J. DAVIS
　　　　　　　　　　　　　　　　　　　　United States District Judge

Jax-6
c:　Timothy Alan Connell